Merrimack County Probate Court
No. 2008-331

IN RE GUARDIANSHIP OF PAUL T. WILLIAMS

Argued: March 12, 2009
Opinion Issued: October 30, 2009

Diane Williams Galebach, by brief and orally, *pro se.*

*McLane, Graf, Raulerson & Middleton, P.A.*, of Portsmouth (*David Wolowitz* and *Andrea L. Daly* on the brief, and *Mr. Wolowitz* orally), for the appellees.

BRODERICK, C.J. The appellant, Diane Williams Galebach, appeals orders of the Merrimack County Probate Court (*King*, J.), which, among other things, established a guardianship over her brother, Paul T. Williams. *See* RSA ch. 464-A (2004 & Supp. 2008). We dismiss her appeal.

The record supports the following. Paul Williams was born in 1973 and is the second youngest of fifteen children. He lived with his parents until sometime in 2006, when they became unable to care for him. Williams then lived with different siblings in order to determine if any of the living arrangements was a good fit. The appellees, Mary Vicinanzo and Margaret Pince, are two of Williams' older siblings. Both have large families and live next to each other in Concord. Williams has consistently expressed a strong preference to live with both families and to have Vicinanzo and Pince appointed as his co-guardians.

In November 2007, Vicinanzo and Pince filed a petition for guardianship of an incapacitated person. Galebach filed a cross-petition for limited guardianship, requesting that her brother's guardianship be limited in scope. She did not challenge, however, the need for a guardianship, nor did she oppose the appointment of her sisters as co-guardians. Galebach's cross-petition made a request for discovery before any guardianship was authorized. She also filed a motion for appointment of a guardian ad litem (GAL) for her brother, served requests for interrogatories and production of documents on Pince, and served a notice of deposition on her father. Vicinanzo and Pince moved to strike the discovery requests on the grounds that they were "inappropriate . . . oppressive and unduly burdensome . . . and largely focused on [Galebach's] personal issues with their family and their religious interests."

Following a preliminary hearing in March 2008, the probate court denied Galebach's motion to appoint a GAL, and granted the sisters' motion to strike discovery. The probate court reasoned that while Probate Court Rule 36 contemplates discovery by adverse parties, the parties before it did not dispute the need for a guardianship or the proper persons to serve in that capacity, and found that "the discovery sought is not reasonable and will serve only to further delay a final resolution to the case." Further, the court determined that Galebach would be allowed to participate in the final hearing, to examine witnesses, and to introduce evidence on relevant issues, but that neither discovery nor the hearing could be used "as a forum to air out family disputes which have been ongoing for several years."

Prior to the final guardianship hearing in April 2008, Galebach filed a motion for a limited guardianship over her brother, reiterating the statements of her earlier cross-petition. She also informed the probate court that she would be unable to attend the final hearing due to an out-of-state trip. Subsequent to the April 8, 2008 final guardianship hearing, at which Williams was present and represented by counsel, the probate court appointed Vicinanzo and Pince as co-guardians over his person, and denied Galebach's motion for limitations, stating:

> The purpose of this order is to address the Motion for Limitations on Guardianship filed by Mrs. Galebach. In her motion, Mrs. Galebach asks the court to allow Paul to retain the right to make decisions concerning four specific issues. . . . [C]ounsel for [Vicinanzo and Pince] and counsel for Paul Williams addressed the issues raised by Mrs. Galebach during the course of the final hearing.

> The court had an opportunity during the course of the hearing to observe the credibility and demeanor of the petitioners as well as Paul Williams, and to see the interaction between Paul, the

petitioners, and several other family members. Having considered the issues raised in the motion in light of the evidence presented, the court is not going to limit the guardians' powers beyond the findings and orders contained in the Guardian over the Person Order issued this date. The court is convinced that the guardians well understand their obligations as Paul's guardians and that they will allow their brother the greatest amount of personal freedom and civil liberties consistent with his mental and physical limitations. The motion for limitations is therefore DENIED, subject to Paul retaining all rights that he has under the guardianship order and RSA Ch. 464-A.

On appeal, Galebach contends that the probate court failed "to protect and give value to . . . Williams's rights." Terming herself an "Interested Party," Galebach argues that the probate court erred in: (1) refusing to limit the guardianship; (2) denying discovery; (3) refusing to appoint a GAL; and (4) violating the ward's "rights to due process, free exercise of religion, and associational rights of speech and self-expression" under the United States and New Hampshire Constitutions. Vicinanzo and Pince seek to dismiss Galebach's appeal, contending that she lacks standing to appeal because she is not an aggrieved person within the scope of RSA 567-A:1 (2007).

In response to the contention that she lacks standing to pursue this appeal, Galebach states that she "participated as an [i]nterested [person] in the [probate court]," and "made motions that were addressed on the merits, in the course of . . . seeking to preserve [her brother's] rights and seeking due process and discovery for his benefit." She contends that because her sisters did not challenge her standing in the probate court, they have waived their right to do so now. We disagree.

RSA 464-A:4, I, provides that "[a]ny . . . interested person . . . may file a verified petition for finding of incapacity and appointment of a guardian." RSA 464-A:2, XIII defines "Interested person" as "any adult who has an interest in the welfare of the person to be protected under this chapter." We do not question that Galebach was an "interested person" in these proceedings and had the right to file her petition for a limited guardianship over her brother. Given her status as an interested person, she had the right to participate fully in the probate court proceedings. That she was an interested person, however, does not necessarily mean that she was "a person . . . aggrieved" by the probate court's guardianship order, thereby giving her standing to appeal under RSA 567-A:1. Consequently, the appellees have not waived their right to challenge her standing to appeal the guardianship order. Moreover, even if the appellees had not challenged

Galebach's standing, we could raise the issue *sua sponte*. *See Libertarian Party of N.H.*, 158 N.H. 194, 195 (2008).

■ Whether a party has standing presents a question of subject matter jurisdiction, which may be addressed at any time. *Id.* In this case, the answer to that question turns on our interpretation of the relevant statutes.

■ "We are the final arbiter of the intent of the legislature as expressed in the words of the statute. When construing the statute's meaning, we first examine its language, and where possible, ascribe the plain and ordinary meanings to words used. If the language used is clear and unambiguous, we will not look beyond the language of the statute to discern legislative intent. We will, however, construe all parts of the statute together to effectuate its overall purpose and to avoid an absurd or unjust result." *Garand v. Town of Exeter*, 159 N.H. 136, 140-41 (2009) (quotation omitted). Further, "[t]he legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect. We also presume that the legislature does not enact unnecessary and duplicative provisions[, and] we interpret statutes in the context of the overall statutory scheme and not in isolation." *Id.* at 141 (quotations and citations omitted). Finally, "[w]e acknowledge that the legislature's choice of language is deemed to be meaningful, and that we generally assume that whenever the legislature enacts a provision, it has in mind previous statutes relating to the same subject matter. Therefore, unless the context indicates otherwise, words or phrases in a provision that were used in a prior act pertaining to the same subject matter will be construed in the same sense. Conversely, *where the legislature uses different language in related statutes, we assume that the legislature intended something different.*" *State Employees Assoc. of N.H. v. N.H. Div. of Personnel*, 158 N.H. 338, 345 (2009) (quotations, citations, and brackets omitted; emphasis added).

As earlier noted, RSA 464-A:4, I, governs standing to file a petition for guardianship and provides that "[a]ny . . . interested person . . . may file a verified petition for finding of incapacity and appointment of a guardian." RSA 464-A:47 mandates that appeals from guardianship orders are to this court under RSA chapter 567-A (2007). RSA 567-A:1 governs who has standing to appeal a probate court's guardianship order: "A person who is aggrieved by a decree, order, appointment, grant or denial of a judge of probate which may conclude that person's interest in a matter before the court may appeal therefrom to the supreme court on questions of law in accordance with rules of the supreme court." Consequently, we consider RSA 464-A:4, I, and RSA 567-A:1, to be "related" for the purpose of our statutory analysis.

■ RSA chapter 567-A does not further define the phrase "a person . . . aggrieved." While we have previously adopted varied constructions of the phrase under different circumstances, we have not previously examined the phrase within the context of a guardianship over an adult. In *Hutchins v. Brown*, 77 N.H. 105 (1913), we addressed the nearly identically worded predecessor statute to RSA 567-A:1, but in connection with the guardianship of a minor. In affirming the superior court's dismissal of an uncle's appeal of the probate court's appointment of an estate's administrator as guardian of his two minor nephews, we stated:

> Generally, it may be said that one cannot be aggrieved by a decision unless he has some private right which is affected thereby. . . .
>
> . . . .
>
> . . . As the [appointment of the guardian] does not relate to any property interest of the appellant in a personal or representative capacity, and as he has not alleged any facts establishing a legal right to the appointment, it does not appear that any legal interest or right of his is affected, and the appeal cannot be maintained.

*Id.* at 106-07 (quotation omitted); *see Leonard v. Fahey*, 87 N.H. 170, 172 (1934) (same). Significantly, the statute governing the guardianship of a minor at that time contained no corresponding language concerning standing, *see* PS ch. 178 (1901). The "interested person" language of RSA 464-A:2, XIII and RSA 464-A:4, I, was not at issue in *Hutchins*, and, in fact, was not added to the statute concerning the guardianship of an adult until sixty-five years later, *see* Laws 1978, ch. 370. Consequently, while *Hutchins* may prove to be helpful in determining Galebach's standing to appeal, it is not dispositive.

■ In considering whether Galebach is "a person . . . aggrieved" under RSA 567-A:1, within the interplay of that statute and RSA chapter 464-A, we must first look to the plain and ordinary meaning of the term "aggrieved." The pertinent definition of "aggrieved" is "having a grievance; specif[ically]: suffering from an infringement or denial of legal rights." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 41 (unabridged ed. 2002). It is not disputed that Galebach was an "interested person" under RSA chapter 464-A, and had the statutory right to file her petition in the probate court for a limited guardianship. The court's denial of her requested limitations is not equivalent, however, to a denial of her legal rights.

■ Additionally, we look to the guardianship statute in order to effectuate its overall purpose. RSA 464-A:1 makes clear that the purposes

of RSA chapter 464-A include "promot[ing] and protect[ing] the well-being of the proposed ward in involuntarily imposed protective proceedings" and "provid[ing] procedural and substantive safeguards for civil liberties and property rights of a *proposed ward.*" (Emphases added.) As such, the focus of the statutory protections is clearly upon Williams, and not Galebach. Consistent with that focus, RSA 464-A:6, I, provides that a proposed ward has an "absolute and unconditional" right to legal counsel. The legislature's overriding concern for the protection of the proposed ward's rights must, therefore, be paramount in our construction of the statute. In the present case, we see nothing to indicate that the probate court's orders have caused Galebach to suffer a legal injury for which either RSA chapter 464-A or RSA 567-A:1 provide protection, or that her rights have been or will be directly affected. *Cf. Libertarian Party of N.H.,* 158 N.H. at 195 (in evaluating whether a party has standing, we focus on whether the party has suffered a legal injury against which the law was designed to protect).

We believe that when the legislature expressly authorized that "[a]ny . . . interested person, or any individual in his or her own behalf," RSA 464-A:4, I, could file a petition for a guardianship over an incapacitated person, it did so to promote the broadest possible protection for a proposed ward by granting generous standing to any adult with an interest in the proposed ward's welfare. However, with regard to standing to pursue an appeal from a probate court's guardianship decision under RSA 567-A:1, the legislature used a different, more limited phrase — "a person who is aggrieved." Assuming that the legislature's use of a different phrase reasonably signals a different meaning, we believe that the legislature intended a more limited standing at the appellate level to those persons actually aggrieved by a probate court's guardianship decision. *See State Employees Assoc. of N.H.,* 158 N.H. at 345 ("where the legislature uses different language in related statutes, we assume that the legislature intended something different" (quotation omitted)).

Having concluded that the legislature intended the phrase "a person who is aggrieved" to mean something more limited than any adult with an interest in the welfare of the proposed adult ward, we turn our attention to examining its intended limits. Here, Galebach, as an interested person, filed a petition for a limited guardianship over her brother. Had the probate court either denied the guardianship or granted lesser protections than what she had sought, she would be "a person . . . aggrieved" under RSA 567-A:1 and have standing to appeal. In either circumstance, the protections she sought for her brother would not have been granted. Her status as an aggrieved person would flow, not from any denial of her own rights, but from the denial of protections sought for the proposed ward.

Further, we do not question that the person whose interests are protected under the guardianship statute — the proposed ward — could appeal the imposition of a guardianship as an aggrieved person, whether a guardianship petition was granted in full or not. Given the legislature's concern for safeguarding the civil liberties and property rights of the proposed ward, see RSA 464-A:1, an involuntarily imposed guardianship might impose greater protections than necessary. As provided for by RSA 464-A:6, I, Williams' rights, including his right to appeal any legal error by the probate court, were adequately protected by his absolute right to counsel. Pursuant to Supreme Court Rule 32-A, Williams' counsel had the responsibility to pursue an appeal of the probate court's guardianship decision if Williams so desired, even if counsel determined that such an appeal would be frivolous.

Thus, while we conclude that there is broad standing for any interested person to petition for the appointment of a guardian under RSA 464-A:4, I, the same is not true with regard to an interested person's ability to appeal when that person either opposes or seeks to limit a guardianship. In either case, the right of appeal would rest with the proposed ward — here, Williams — as the proposed ward would be aggrieved by a guardianship that he did not want or that imposed greater protections than necessary. The legislature provided for that by guaranteeing counsel for the proposed ward in such proceedings.

In her cross-petition, Galebach neither challenged Williams' need for a limited guardianship, nor opposed her sisters as the co-guardians. Although she contends that the probate court imposed greater protections on her brother than she requested, the right of appeal in this case rests with her brother, who was represented by counsel, and not Galebach. Here, only Williams has the right to appeal the imposition of the guardianship or the specific protections; Vicinanzo, Pince, and Galebach would have the right to appeal if the guardianship were not granted, or if the probate court had imposed fewer restrictions on the ward's liberties than those requested in the petition.

We have not previously defined the phrase in RSA 567-A:1 — "a person who is aggrieved" — within the context of an appeal pursuant to RSA chapter 464-A, and we need not define its exact parameters here. We simply hold that pursuant to the statutory scheme, the appellant, an interested person under RSA 464-A:4, I, who did not contest either the need for a guardianship over her brother or the proposed guardians, but who unsuccessfully petitioned to place certain limitations on the guardianship over her brother, is not "a person who is aggrieved" under RSA 567-A:1 and does not have standing to pursue an appeal in this case.

In her brief, Galebach argues that she is a person aggrieved because she "acted in a representative capacity" for her brother in the probate court. In her reply brief, she adds that she "filed three substantive motions and served three discovery requests . . . in a representative capacity for [her brother's] rights." To the extent that Galebach intended her argument to refer to providing legal representation for her brother, as inferred by Vicinanzo and Pince at oral argument, we disagree. Pursuant to RSA 464-A:6, Williams was fully represented in the probate court by counsel. Even assuming that Galebach could have acted in a representative capacity for her brother, as either his counsel, *see* RSA 311:1 (2005) ("A party in any cause or proceeding . . . may be represented by any citizen of good character."), or as a GAL if appointed, we underscore that she acted as neither in this case.

We also disagree with Galebach's contention that, as Williams' sister, she is a person aggrieved with standing to appeal because she holds a "private right" of her brother "in a representative capacity as his closest relative in the proceeding." In support of her contention, Galebach first relies upon the following passage:

> A person is aggrieved when he has some private right which is affected by the decision of the probate court, and this private right may be held in a representative capacity.

10 C. DEGRANDPRE, NEW HAMPSHIRE PRACTICE, PROBATE LAW AND PROCEDURE § 13-3(a), at 120 (3d ed. 2001). In support of the statement in his treatise, DeGrandpre cites to *Hutchins v. Brown*. While the *Hutchins* case supports DeGrandpre's statement, we do not view the case as supportive of Galebach's argument.

As previously mentioned, *Hutchins v. Brown* involved a probate court's appointment of the administrator of a decedent's estate, as guardian of the decedent's two minor sons. Hutchins, the minors' paternal uncle, had unsuccessfully petitioned for his own appointment as guardian. Hutchins appealed to the superior court, which granted the administrator's motion to dismiss. *Hutchins*, 77 N.H. at 105-06. We affirmed the superior court on the grounds that Hutchins had no right, under the nearly identically worded predecessor statute to RSA 567-A:1, to maintain an appeal. *Id.* at 108. Specifically, we stated: "Generally, it may be said that one cannot be aggrieved by a decision unless he has some private right which is affected thereby." *Id.* at 106 (quotation omitted). We noted further that "an executor named in a will has an interest in his representative capacity sufficient to maintain an appeal from a decree disallowing the will," and "[a] foreign administrator may appeal from the appointment of an administrator in this state," *id.* at 107. Further (as noted by DeGrandpre in his treatise), "[i]n

short, there is a right of appeal when the rights affected are held in a representative capacity," *id*. We concluded:

> The plaintiff, as the uncle of the minors, is properly deeply interested in their welfare, but his interest is that of affection and friendship. His interest in the [appointment of the guardian] arising therefrom is natural and proper; but not being of a pecuniary nature or resting upon a personal right, he is not a person legally aggrieved.

*Id.* at 107-08.

Hutchins had no representative capacity of a private right and, thus, no standing to appeal the probate court appointment of the administrator as guardian. While Galebach's reliance upon DeGrandpre's treatise, with its reference to *Hutchins v. Brown*, might have merit in a will contest if she were the executor of Williams' estate, that is not the case here.

Citing *In re Estate of Kelly*, 130 N.H. 773 (1988), Galebach next argues that her "close blood relationship" to Williams, as his sister, satisfies the representative capacity standing requirement. We believe that her reliance upon *Estate of Kelly* is misplaced. In *Estate of Kelly*, which did not concern RSA chapter 464-A, the first issue raised was whether the petitioners, grandchildren of the decedent, had standing to appeal the probate court's decision in a will contest under RSA 567-A:1. The decedent had left $10,000 in a testamentary trust to be distributed to her grandchildren when the last of them reached the age of thirty-five. *Estate of Kelly*, 130 N.H. at 775. We stated:

> The general rule is that an aggrieved person under [RSA 567-A:1] is one who has a direct pecuniary interest in the estate of the testator which will be impaired if the instrument in question is held to be a valid will. Furthermore, the interest which the person must possess is such that if he prevails in the contest he will be entitled to a distributive share in the testator's estate. In other words, a will contestant must generally have some direct legal or equitable interest in the decedent's estate.
>
> Generally, persons who have a direct legal or equitable interest in the estate are heirs, creditors or legatees under a prior will. The term heir applies to those who take by reason of blood relationship or persons who would take the estate under the statute of distribution. RSA 561:1, which provides for intestate distribution, and RSA 21:20, which defines "issue" as all "lawful lineal descendants of an ancestor," make it clear that petitioners are heirs.

Generally, persons who have a direct legal or equitable interest in the estate are heirs, creditors or legatees under a prior will. The term heir applies to those who take by reason of blood relationship or persons who would take the estate under the statute of distribution. RSA 561:1, which provides for intestate distribution, and RSA 21:20, which defines "issue" as all "lawful lineal descendants of an ancestor," make it clear that petitioners are heirs.

We conclude that the petitioners are heirs, and that their pecuniary interests under the will are affected by the order of the probate court. We therefore hold that they have standing to appeal.

*Id.* at 777-78 (quotations, citations, brackets, and ellipses omitted). The petitioners in *Estate of Kelly* were accorded standing not because they had a "close blood relationship" with the decedent, as argued by Galebach. Instead, they were accorded standing because, as persons who would take the decedent's estate under the statute of distribution, they had a direct pecuniary interest in the estate, and that interest would be impaired if the will in question were held to be valid. In the instant case, none of those factors applies to Galebach.

That an "interested person" has standing to bring a petition to limit the scope of a proposed guardianship, but does not necessarily have standing to appeal a probate court's grant of a guardianship with greater protections than requested, is, we believe, consistent with that section of RSA chapter 464-A concerning the termination of a guardianship. Pursuant to RSA 464-A:40, either the "ward or any person interested in the ward's welfare may, at any time, file a motion for the termination of the guardianship." As with RSA 464-A:4, RSA 464-A:40 provides for broad standing to commence proceedings designed to protect the ward by removing limitations on the ward's rights. At the termination hearing, conducted in a manner similar to that of the guardianship hearing and with the ward's rights protected by counsel, the burden is on the guardian to prove that the grounds for the appointment of the guardian continue to exist, *see* RSA 464-A:40, II(c). If the probate court denies the petition for termination, the right of appeal lies with the ward. It does not lie with the person interested, as that person has not suffered a legal injury against which RSA chapter 464-A was designed to protect, and that person's own rights have not been directly affected. If the probate court grants the petition, the right of appeal lies with the guardian — the person who, the probate court ruled, had not carried the burden of proof.

We also believe our holding today is consistent with our related cases. In *Green v. Foster*, 104 N.H. 287 (1962), the plaintiff, a sister-in-law of the decedent, sought to set aside the probate of the decedent's will on the grounds of incompetency, undue influence, and fraud. The plaintiff was not an heir but had received a legacy under the will; the allowance of the will confirmed her legacy. In dismissing the plaintiff's appeal and affirming the superior court's decision that she was not a proper party to contest the will, we relied on the nearly identically worded predecessor statute to RSA 567-A:1 and stated:

> The general rule is that an aggrieved person under statutes similar to RSA 567:1 is one who has a direct pecuniary interest in the estate of the alleged testator which will be defeated or impaired if the instrument in question is held to be a valid will. This general definition is neither complete nor comprehensive since there are other parties who may be allowed to appeal providing they have an official or public duty to do so even though they may not have any direct or pecuniary interest in the estate as such.

> . . . The contestant not being an heir or a creditor, or a legatee under a prior will, and having no official or public duty in connection with the administration of the estate cannot be considered an aggrieved person under the governing statute . . . .

> The probate appeal statute is more restrictive than other statutes allowing appeals, presumably because there is a public policy in favor of securing the orderly and expeditious settlement of estates. The probate appeal statute . . . also expresses a policy against will contests except by those who can show a direct interest, private or public, which will be adversely affected if the will is allowed.

*Green*, 104 N.H. at 288-89 (quotation, citations, and ellipsis omitted); *see also Bryant v. Allen*, 6 N.H. 116, 118 (1833) (plaintiff, with interest in decedent's real estate, entitled to appeal allowance of administrator's accounting by probate court: "every person, whose rights may be affected by the decree, may be considered as so aggrieved as to entitle him to appeal"); *Shirley v. Healds*, 34 N.H. 407, 412 (1857) (executor named in decedent's last will and testament entitled to appeal probate court's disallowance of the will: "It would be quite remarkable if a person were made liable to punishment for not doing what he had not sufficient interest to give him a legal right to do."); *Bennett v. Tuftonborough*, 72 N.H. 63, 64

(1903) ("Generally, it may be said that one cannot be legally aggrieved by a decision unless he has some private right which is affected thereby."); *Worthen v. Railroad*, 77 N.H. 520, 520-21 (1915) (in wrongful death action brought by estate's administrator, appointed for sole purpose of bringing suit, defendant railroad not entitled to appeal probate court decree appointing administrator).

Having determined that Galebach lacks standing to appeal in this case, we need not address her other arguments.

*Appeal dismissed.*

DUGGAN and HICKS, JJ., concurred; DALIANIS, J., concurred specially.

DALIANIS, J., concurring specially. I concur in the result the majority reaches. I write separately, however, because I believe that this appeal is resolved by applying RSA 21:2 (2000), and because, in my view, the majority has decided issues that are not squarely before us.

RSA 21:2 governs our statutory interpretation. It provides: "Words and phrases shall be construed according to the common and approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed and understood according to such peculiar and appropriate meaning."

RSA 567-A:1 (2007) provides: "A person who is aggrieved by a decree, order, appointment, grant or denial of a judge of probate which may conclude that person's interest in a matter before the court may appeal therefrom to the supreme court on questions of law in accordance with rules of the supreme court." Our construction of the phrase "person . . . aggrieved" is well-settled and long-standing. *See, e.g., Johnson v. Town of Wolfeboro Planning Bd.*, 157 N.H. 94, 99 (2007) (to be a "person[] aggrieved" under RSA 677:15 (2008), "a litigant must have a direct definite interest in the outcome of the proceedings"); *In re Estate of Kelly*, 130 N.H. 773, 777 (1988) (to be a "person . . . aggrieved" under RSA 567-A:1, in the context of a will contest, a person must have a "direct pecuniary interest" in the testator's estate (quotation omitted)); *Hutchins v. Brown*, 77 N.H. 105, 106 (1913) (to be a "person . . . aggrieved" under predecessor to RSA 567-A:1, in the context of proceeding to appoint guardian for minor child, person must have "some private right which is affected thereby" (quotation and brackets omitted)); *cf. Appeal of Richards*, 134 N.H. 148, 154 (to be a person "directly affected" by an administrative agency decision and, thus, to have standing under RSA 541:3 (2007) to appeal that decision, person must show that "he has suffered or will suffer an injury in fact" (quotation omitted)), *cert. denied*, 502 U.S. 899 (1991); *Weeks Restaurant Corp. v. City of Dover*, 119 N.H. 541, 543 (1979) ("There is no significant distinction

between 'persons directly affected,' and 'persons aggrieved.' " (citations omitted)). "[T]he legislature is presumed to know the meaning of the words it chooses and to use those words advisedly." *State v. Njogu*, 156 N.H. 551, 554 (2007).

Applying this well-settled definition of "person . . . aggrieved" to the present case, I agree with the majority that the appellant, Diane Williams Galebach, has failed to demonstrate that she has a direct, definite interest in the guardianship proceedings concerning her brother. Accordingly, she is not a "person . . . aggrieved" within the meaning of RSA 567-A:1, and, thus, lacks standing to pursue this appeal.

In my opinion, the majority addresses issues that are not before us. For instance, the majority states: "Had the probate court either denied the [appellant's] petition or granted lesser protections than what she had sought, she would be 'a person . . . aggrieved' under RSA 567-A:1 and have standing to appeal." Similarly, the majority states: "[W]e do not question that the person whose interests are protected under the guardianship statute — the proposed ward — could appeal the imposition of a guardianship as an aggrieved person, whether a guardianship petition was granted in full or not." Additionally, the majority rules that the ward's siblings "would have the right to appeal if the guardianship were not granted, or if the probate court imposed fewer restrictions on the ward's liberties than those requested in the petition." The majority also construes RSA 464-A:40 (2004), which governs the termination of a guardianship, a provision that is *not* at issue in this appeal. As these issues are not before us, I believe we should not yet opine upon them. "This court . . . decides actual cases, not hypothetical ones." *In the Matter of Jacobson & Tierney*, 150 N.H. 513, 519 (2004) (Nadeau, J., dissenting).