Hillsborough County Probate Court
No. 2010-634

JULIE SHELTON & a.

v.

SAMUEL A. TAMPOSI, JR. & a.

Argued: July 13, 2012
Opinion Issued: January 11, 2013

492

*Choate, Hall & Stewart LLP*, of Boston, Massachusetts (*Robert S. Frank, Jr.* and *Robert M. Buchanan, Jr.* on the brief, and *Mr. Frank* orally), for petitioner Julie Shelton.

*Robert A. Stein*, of Concord, on the brief, *Ransmeier & Spellman, P.C.*, of Concord (*Frank E. Kenison* on the brief and orally), *McDermott, Will and Emery LLP*, of Boston, Massachusetts (*Michael Kendall* on the brief and orally), and *Barradale, O'Connell, Newkirk & Dwyer*, of Bedford (*Pamela J. Newkirk* on the brief), for the respondents.

PER CURIAM. Petitioner Julie Shelton, trustee of the Elizabeth M. Tamposi Trusts (the EMT trusts), appeals a lengthy and detailed order of the Hillsborough County Probate Court (*Cassavechia*, J.) that dismissed the complaint filed by: (1) Shelton, in her capacity as trustee of the EMT Trusts; and (2) Elizabeth M. Tamposi. Shelton argues that the trial court erred in: (1) construing the governing trust instrument; (2) ruling that, by filing the complaint, Elizabeth Tamposi violated the in terrorem clause; (3) ordering Shelton to pay the attorneys' fees "of both the Respondents and the voluntary Intervenors"; and (4) removing Shelton from her position as trustee. We affirm in part and remand.

The following facts are found in the trial court's order or are supported by the record before us. Samuel Tamposi, Sr. (Sam, Sr.) had six children: Samuel, Jr. (Sam, Jr.), Michael, Elizabeth (Betty), Nicholas (Nick), Celina (Sally) and Stephen (Steve).[1] In 1992, Sam, Sr. established the Samuel A. Tamposi, Sr. 1992 Trust, which was designed to benefit him during his lifetime and, after his death, his six children and their issue. It was amended four times by Sam, Sr. prior to his death. In its final form, it specified that after his death, the trust corpus was to be divided into twelve separate trusts for each of his children and their issue (sibling trusts); six trusts contained assets exempt from the federal generation skipping transfer tax and six contained non-exempt assets. It also provided that Sam, Jr. and Steve would serve as investment directors of the twelve trusts and that a trustee would also be appointed. The trial court found that the third amendment to the trust "confer[red] certain fiduciary responsibilities on the investment directors that are more commonly vested in a trustee."

Sam, Sr. also subsequently established the Samuel A. Tamposi Sr. 1994 Irrevocable Trust; he named David Tulley as his successor trustee for this trust. The 1992 and 1994 trusts were eventually consolidated pursuant to a settlement agreement of the parties; we refer to them collectively for purposes of our analysis as the SAT Sr. Trust.

Sam, Sr. died in 1995. At the time of his death, in accordance with the provisions of the amended 1992 trust, Sam, Jr. and Steve became the investment directors of the twelve sibling subtrusts. Gerald Prunier succeeded the original trustee, David Tulley. In 2000, Sam, Jr. and Steve, as investment directors, and Prunier filed a petition for declaratory judgment in which they sought a ruling that the trustee was required to act in accordance with the written directions of the investment directors, and that, in doing so, the trustee would incur no liability. The petition "alleged that Betty and Nick had expressed interest in a possible 'buy-out' or separation of their beneficial interests in the trust property."

Later that year, Nick and Betty and their children filed their own petition for declaratory judgment, seeking a ruling that they could participate in the action initiated by Sam, Jr. and Steve without triggering the in terrorem clause contained in the 1992 trust. The probate court ruled that as long as they did not attempt to challenge the validity of the trust or authenticity of documents, but sought only to uphold fiduciary standards under the trust and New Hampshire law, the in terrorem clause would not be triggered. Both petitions were dismissed by agreement in November 2000.

---

[1] Because the trial court and parties refer to the Tamposi patriarch and his six children by their nicknames, we also do so to allow ease of reference to the record before us.

The trial court also found that in September 2001, Betty and Nick filed suit against "Sam, Jr. and Steve, individually and as investment directors; Gerald Prunier, individually and as trustee; and David Tulley, individually and as trustee for the Samuel A. Tamposi, Sr. 1994 Irrevocable Trust; this time for breach of fiduciary duties." Betty and Nick took a voluntary non-suit approximately two months later.

Between 2001 and 2006, disagreements between Betty and Nick and their siblings continued. Following mediation, a settlement agreement was reached which provided that: (1) the SAT Sr. 1994 Trust for the benefit of each child would be merged into his or her respective non-exempt sibling sub-trust; (2) Nick and Betty could appoint his or her own trustee; and (3) Sam, Jr. and Steve would resign as investment directors over all but ten assets in Betty's and Nick's subtrusts pending their liquidation. Changes made to the SAT Sr. Trust as a result of the settlement agreement were approved by the court on February 22, 2007. Betty appointed Shelton as her trustee in August 2007.

The case giving rise to this appeal began in October 2007, when Shelton and Betty filed a pleading entitled "Complaint" against Sam, Jr. and Steve, "Individually and as Investment Directors of Elizabeth M. Tamposi GST Trust and the Elizabeth M. Tamposi Trust both created under the Samuel A. Tamposi, Sr. 1992 Trust and the Elizabeth M. Tamposi Trust created under Samuel A. Tamposi, Sr. 1994 Irrevocable Trust, and as Directors of the Tamposi Companies." They filed an amended complaint in March 2009.[2] In their amended complaint, Shelton and Betty requested that the trial court: (1) order the "decoupling" of the EMT Trust assets from the other subtrusts created by the 1992 Trust Instrument and from the control of the respondents; (2) order the removal of Sam, Jr. and Steve as investment directors of the EMT Trusts and as directors of "the Tamposi Companies"; (3) surcharge the respondents "for all losses to the EMT Trusts and the Gifted Assets caused by Respondents' breaches of their fiduciary duties to Petitioners"; and (4) award them "their attorneys' fees and costs in this action, and any other costs caused by the actions of Respondents." They also sought "a declaration that it is the role of Petitioner Trustee Julie Shelton to determine what amounts need to be made available to the EMT Trusts so that the Trustee can fulfill her fiduciary obligations to make the appropriate distributions to the beneficiaries of the EMT Trusts to provide for their education and maintenance in health and reasonable comfort and it is the role of the Respondents Investment Directors Samuel A. Tamposi, Jr. and Stephen A. Tamposi to manage the assets of the EMT Trusts so that

---

[2] Shelton and Betty filed a complaint and amended complaint. The trial court order refers to Shelton and Betty as petitioners. For ease of reference, we do so also.

the needs are met." The trial court summarized this as a request for a ruling that Shelton as trustee had "sole responsibility and authority to determine appropriate distributions from the EMT Trusts; and that the investment directors' responsibility is to provide funds when and in the amount requested by the trustee."

In January 2008, counsel for trustee Prunier filed an appearance. In August 2008, the trial court granted without objection the motion to join filed by Michael Tamposi and Celina Tamposi Griffin. The trial court found that at the time this litigation began, the SAT Sr. Trust was comprised of the original trust instrument, the first, third and fourth amendments executed by Sam, Sr., certain provisions of the 2006 settlement agreement, and a 2007 court order.

After a trial of more than five weeks, the probate court dismissed the petitioners' complaint and amended complaint, and granted several motions filed by the respondents. The court also found that the in terrorem clause of the trust had been violated and, accordingly, Betty "forfeited her right, title and interest in the trust." In its order, the trial court indicated that it intended to award attorneys' fees and costs to the respondents and intervenors following receipt of further filings. Both Shelton and Betty filed appeals with this court. We subsequently granted with prejudice Betty's motion to withdraw her appeal.

We note that the trial court has not yet determined the amount of fees and costs to be awarded to the respondents and the intervenors. Accordingly, this appeal would appear to be interlocutory. *See Van der Stok v. Van Voorhees*, 151 N.H. 679, 681 (2005). To the extent that it may have been interlocutory when we accepted the appeal, we waive the requirements of Supreme Court Rule 8, *see* SUP. CT. R. 1, and now consider the appeal on its merits.

■■ Shelton first argues that the trial court erred in construing the governing trust instrument. As she concedes, when we construe a trust instrument, "the intention of a settlor is paramount, and we determine that intent, whenever possible, from the express terms of the trust itself." *Appeal of Lowy*, 156 N.H. 57, 61 (2007). The rules of construction that apply to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of trust property. RSA 564-B:1-112 (2007) (amended 2011); *see* RSA 564-B:11-1104 (a) (1) (Uniform Trust Code applies to all trusts created before, on, or after its effective date). We reject any construction of trust language that would defeat the clear and expressed intention of the settlor.

*Lowy,* 156 N.H. at 61. The settlor's intent is a question of fact to be determined by competent evidence and not by rules of law. *King v. Onthank,* 152 N.H. 16, 18 (2005).

Although Shelton concedes that the trust instrument contemplates an equal initial distribution of assets to the individual trusts, she argues that it "does not empower the Investment Directors to make decisions on whether to make 'distributions to the trustees.'" She contends that "all of the trust assets are owned by the Trustees. The role of the Investment Directors is only to direct them in making suitable investments." In essence, she argues that the trust documents give her the authority to determine not only what is distributed from the EMT Trusts to the beneficiaries but also the amount and timing of distributions that are to be made from the SAT Sr. Trust to the individual EMT sub-trusts. The respondents argue that Shelton's construction fails to give appropriate weight to Article Tenth-B of the Third Amendment of the trust.

We briefly examine the language at issue. Shelton relies upon Articles Fifth and Sixth, which authorize the trustee to "pay to or for the benefit of the child . . . such amounts from the net income and principal of the trust and in such proportions among them as the trustee considers necessary for their education and maintenance in health and reasonable comfort." Article Tenth-B is also applicable to the administration of the trust. It provides, *inter alia*:

(c) The trustee shall make purchases, pledges, sales or other dispositions of securities, real estate interests and other operating entities only as the investment directors from time to time may direct in writing.

(d) The trustee shall entrust to the investment directors the management, control, handling, financing, refinancing and structuring of any and all real estate interests and other operating entities from time to time included in the trust property. In no event shall the trustee assume any responsibility in connection with the management, control and handling of such real estate interests or other operating entities.

(e) The investment directors shall have full power and authority to direct the retention or sale of all other assets from time to time included in the trust property and to direct the purchase of property with any principal cash included in the trust property. The trustee shall have no responsibility for any loss that may occur by reason of acting without question upon any such direction by the investment directors.

After reviewing all the applicable documents, the probate court found that Sam, Sr. "conferred on Sam, Jr. and Steve unequivocal authority to make investment decisions and rendered their decisions neither reviewable nor reversible by the trustee." In construing the documents, the trial court found that the Third Amendment set up two classes of fiduciaries, a trustee and two investment directors, for the 12 sibling sub-trusts, and that certain fiduciary responsibilities given to the investment directors were more commonly vested in a trustee. The trial court found that the investment directors "are given authority and have the responsibility for the investment and management of the trust assets, while the trustee is tasked with determining the needs of the beneficiaries and distributing appropriate funds to them in accordance with the applicable ascertainable standard." Citing Article Tenth-B (d) and (e), the trial court also found that the investment directors have the authority "to control, finance, and structure all real estate assets and operating entities; full authority to direct the retention or sale of all trust assets; and to direct the purchase of property with cash principal." The trial court further found that, under this article, "[t]he trustee is expressly *prohibited* from making any decisions about the investment or sale of trust assets, and in the parlance of RSA 564-B:7-711, the trustee is an 'excluded fiduciary' with respect to investment and management of trust assets." *See* RSA 564-B:1-103 (24). In so ruling, the trial court also recognized that "the trustee retains the authority and discretion to determine the amount and timing of distributions to the beneficiaries, and the investment directors are 'excluded fiduciaries' regarding distributions to beneficiaries."

In each of the three provisions cited by the trial court, the authority of the trustee is subordinate to that of the investment directors. The trustee has authority to make dispositions of trust property *only* as directed in writing by the investment directors. The trustee is specifically prohibited from assuming any responsibility for the management, control and handling of the trust assets. The full power and authority to direct the retention or sale of assets and to direct the purchase of property with any principal cash reserves is reserved exclusively to the investment directors.

██ Shelton argues that the trial court's interpretation is in conflict with the authority given to the trustee under Articles Fifth and Sixth of the trust. We disagree. Contrary to her assertion that the trial court's interpretation "vitiated" the effect of Articles Fifth and Sixth, the trial court's construction melded all provisions of the trust, rather than reading any one provision in isolation. *See, e.g., In re Estate of Donovan*, 162 N.H. 1, 4 (2011) (clauses in will not read in isolation; rather their meaning is determined from language of will as a whole). Articles Fifth and Sixth

control the distributions to be made from the trust; they do not address distributions to the trust. To interpret the language of the trust in any other manner would fail to give effect to its specific language that provides the investment directors discretion in determining whether distributions should be made to the subtrusts and the timing and source of the distributions.

Shelton also cites as error the trial court's reliance upon extrinsic evidence of Sam, Sr.'s intent. Even if we assume without deciding that such reliance was in error, it did not alter the trial court's initial interpretation of the trust documents. Accordingly, to the extent that there was error, it was harmless. *See Appeal of Ann Miles Builder*, 150 N.H. 315, 320 (2003) (where it appears error did not affect outcome below, or where court can conclude from entire record that no injury has been done, judgment will not be disturbed).

Shelton next argues that the trial court erred in concluding that the filing of the petition violated the in terrorem clause. In response to the respondents' contention that she does not have standing to contest this ruling, she argues that she has standing "for at least three reasons": (1) as trustee, she has a fiduciary duty to defend the settlor's intent; (2) the trial court's attorneys' fee award against her "is inextricably linked to the Court's decision on the *in terrorem* clause issue"; and (3) the *in terrorem* ruling is the basis for a surcharge motion that is pending in the trial court.

After this case was argued, we remanded it to the trial court to clarify the basis for its award of fees against Shelton. In its order following remand, the trial court stated: "Although the award of fees against Shelton and Elizabeth Tamposi ("Betty") was included in the section of the Order captioned '*In terrorem* Clause,' the court did not intend to suggest that they flowed as a consequence of violating the clause but for their actions and conduct in relation to their endeavor to sever Betty and her [progeny's] beneficial interests from those of her siblings and their issue in contradiction of what her father envisioned and implemented for them."

The specific issue of whether a trustee has standing to contest a trial court's ruling that litigation brought both by her in her official capacity and by a beneficiary violates an in terrorem clause of the trust instrument is an issue of first impression for this court.

RSA 567-A:1 (2007) governs appeals to the supreme court from the probate court. It provides: "A person who is aggrieved by a decree, order, appointment, grant or denial of a judge of probate which may conclude that person's interest in a matter before the court may appeal therefrom to the supreme court on questions of law in accordance with rules of the supreme court."

To determine whether Shelton has standing to appeal the trial court's finding that the litigation violated the in terrorem clause of the trust requires that we interpret RSA 567-A:1. We note that the trial court was not required to address the issue of standing because Betty, a beneficiary of the EMT Trusts, participated as a petitioner in that court.

Our principles of statutory construction are well-established. Generally, when construing statutes we first examine the language used, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Ocasio v. Fed. Express Corp.*, 162 N.H. 436, 450 (2011). We interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.* By doing so, we are better able to discern the legislature's intent and therefore better able to understand the statutory language in light of the policy sought to be advanced by the entire statutory scheme. *Id.*

Although RSA 567-A:1 was first enacted in 1975, its predecessor statute established the same requirements for appeal. The 1975 amendment limited appeals to questions of law and directed that they be brought in the supreme court. Because the 1975 amendment did not change the parameters of the appealable interests, our previous case law provides some guidance on the issue before us.

■ We have held that "[g]enerally, it may be said that one cannot be aggrieved by a decision unless he has some private right which is affected thereby." *Hutchins v. Brown*, 77 N.H. 105, 106 (1913). We recently construed the term "aggrieved" as used in RSA 567-A:1 in *In re Guardianship of Williams*, 159 N.H. 318 (2009). We find its analysis instructive in this case.

■ In *Williams*, 159 N.H. at 324, we observed that the pertinent plain and ordinary meaning of the term "aggrieved" is "having a grievance; specif[ically]; suffering from an infringement or denial of legal rights." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 41 (unabridged ed. 2002). To determine whether the appellant in *Williams*, a guardianship case, had standing to appeal an order of the trial court establishing a guardianship over her brother, we examined the purpose of the underlying statute and concluded that because its protections were clearly focused upon the proposed ward and not the appellant, the appellant lacked standing to appeal.

■ We conclude that, in this case, Shelton does not have standing to challenge the ruling that the in terrorem clause was violated. The Uniform Trust Code provides that "[u]pon acceptance of a trusteeship, the trustee shall administer, invest and manage the trust and distribute the trust property in good faith, in accordance with its terms and purposes and the

interests of the beneficiaries, and in accordance with this chapter." RSA 564-B:8-801 (2007). Specifically, a "trustee has a duty to administer the trust in a manner that is impartial with respect to the various beneficiaries of the trust[;] . . . the trustee must act impartially and with due regard for the diverse beneficial interests created by the terms of the trust." RESTATEMENT (THIRD) OF TRUSTS § 79 (1) (a) (2007). While we have held that "an executor named in a will has an interest in his representative capacity sufficient to maintain an appeal from a decree disallowing the will," *Hutchins*, 77 N.H. at 107, this is not an analogous case. The in terrorem ruling affects only one of several beneficiaries under the EMT Trusts. *See, e.g., Northern Trust Co. v. Heuer*, 560 N.E.2d 961, 964 (Ill. App. Ct. 1990) (unless terms of trust document provide otherwise, trustee's fiduciary duty to each beneficiary precludes her from favoring one beneficiary over another). Indeed, it may be argued that by pursuing this appeal, Shelton's interests are adverse to all beneficiaries other than Betty.

▇ Moreover, there is no need to authorize Shelton to appeal the in terrorem clause ruling as a representative of the affected beneficiary. The beneficiary herself had a personal interest sufficient to enable her to appeal such a ruling, and she was fully capable of protecting her own interests by doing so. *Cf. Williams*, 159 N.H. at 326-27. Accordingly, we conclude that Shelton does not have standing as the trustee of the EMT Trusts to contest on appeal the trial court's ruling on the in terrorem clause.

Nor can Shelton base her claim of standing on the trial court's award of fees given the trial court's ruling that the award was based on her overall conduct as trustee rather than any violation of the in terrorem clause. That her conduct may have contributed to its violation does not establish standing given that she did not suffer the loss of any legal right as a result of the in terrorem ruling.

Finally, although Shelton argues that she has standing because the in terrorem ruling "is the basis for a surcharge motion currently pending in the probate court," no ruling has been made on that motion. In the absence of a ruling, we cannot determine what relief, if any, the trial court will grant and whether Shelton's legal rights will be affected. Accordingly, the issue of whether the surcharge motion would convey standing upon Shelton to appeal the in terrorem clause ruling is not ripe for our review. *See, e.g., Appeal of Tancrede*, 135 N.H. 602, 604 (1992).

Shelton next argues that the trial court erred in ordering her to pay the attorney's fees "of both the Respondents and the voluntary Intervenors." The trial court found that the petitioners had acted in bad faith by bringing and prosecuting the litigation giving rise to this appeal. The court denied the petitioners' request for attorney's fees and costs and ordered them to

pay the reasonable attorney's fees and costs incurred by the respondents and the intervenors in defending this action. In its summary of the relief to be granted, the trial court ruled: "After receipt of further filings, the court will make a determination of attorneys' fees and costs of the respondents and intervenors chargeable to and payable by the petitioners."

Shelton argues that the trial court erred in finding that she conducted the litigation in bad faith. She also argues that there is no precedent to support an award of attorney's fees against her in her individual capacity when she was a party to the litigation only in her official capacity as trustee of the EMT trusts.

We review a trial court's award of attorney's fees under our unsustainable exercise of discretion standard, giving deference to the trial court's decision. *LaMontagne Builders v. Brooks*, 154 N.H. 252, 259 (2006). To be reversible on appeal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party. *Id.* If there is some support in the record for the trial court's determination, we will affirm it. *Id.* New Hampshire generally follows the American Rule; that is, absent statutorily or judicially created exceptions, parties pay their own attorney's fees. *Board of Water Comm'rs, Laconia Water Works v. Mooney*, 139 N.H. 621, 628 (1995).

The parties agree that the probate court's authority to order payment of attorney's fees in this case is governed by RSA 564-B:10-1004 (2007), which provides: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." We have not yet construed the specific language of RSA 564-B:10-1004. Moreover, we note that this appeal was filed prior to any specific ruling by the trial court on the period of time that the award covers or the actual factors that it will consider in determining the amount. However, because we interpret statutes on a *de novo* basis, *see, e.g., In re Guardianship of Eaton*, 163 N.H. 386, 389 (2012), we conclude that the interests of judicial economy support our decision to decide this issue that has been briefed by the parties. *Cf. J.E.D. Assoc.'s, Inc. v. Town of Atkinson*, 121 N.H. 581, 584 (1981), *overruled on other grounds by Town of Auburn v. McEvoy*, 131 N.H. 383 (1988). We limit our review to the legal issues of whether the probate court has the authority to assess legal fees against a trustee in her personal capacity when her role in the litigation was limited to her official capacity as trustee, and, if so, whether the probate court is authorized to award fees to the intervenors, where as Shelton contends, they were voluntary parties.

■ We turn then to the specific language of RSA 564-B:10-1004, which authorizes the court, "as justice and equity may require," to award costs and expenses, including attorney's fees "to *any* party, to be paid by another party or from the trust that is the subject of the controversy." (Emphasis added.) The language of this statute provides an exception to the American Rule that generally each party is responsible for his or her own fees. *See, e.g., In re Estate of King*, 920 N.E.2d 820, 827 (Mass. 2010). We agree with the Supreme Judicial Court of Massachusetts that the words "as justice and equity may require . . . establish a broad standard, one that certainly reaches beyond bad faith or wrongful conduct." Nevertheless, before an award of fees is made, the trial court must provide a reason, grounded in equity, as to why such an award should be made. *See id.*

■ We acknowledge at the outset that, when acting in the proper exercise of her official duties, a trustee should not generally be held personally liable under the Uniform Trust Code for attorney's fees incurred by any party. *See, e.g., Garwood v. Garwood*, 233 P.3d 977, 985 (Wyo. 2010). We note, however, that the use of the word "any" conveys broad authority upon the trial court to award attorney's fees to *any* party "to be paid by another party" "as justice and equity may require." While the statute does not provide specific criteria for such an award, it gives the trial court flexibility to determine what is fair on a case by case basis. *See Atwood v. Atwood*, 25 P.3d 936, 947 (Okla. Ct. App. 2001); *Shurtleff v. United Effort Plan Trust*, No. 20120300, 2012 WL 3176369, at *6 (Utah August 3, 2012). Therefore, we conclude that the statute may, under certain circumstances, authorize the award of attorney's fees against a trustee personally.

■ We are also not persuaded by Shelton's argument that the trial court lacked authority to award fees to the intervenors, who, she observes, "joined in this case voluntarily." As a preliminary matter, we note that "[i]n a suit by a trustee for construction or by one beneficiary to protect his interest, it is generally held that all beneficiaries (or the other beneficiaries) are necessary parties since a decree will or may benefit or prejudice them." G. Bogert, The Law of Trusts and Trustees § 871, at 179 (2d ed. rev. 1995). As Bogert observes, "[their] interests may conflict and the trustee has an interest adverse to them and should not be allowed to represent them." *Id.* at 179-80.

Shelton cites *Clipper Affiliates v. Checovich*, 138 N.H. 271 (1994), in support of her argument that a party who is neither forced to litigate nor subjected to litigation should bear the burden of paying his or her own attorney's fees. *Clipper Affiliates* provides a helpful discussion of the exceptions to the general principle that each party to a lawsuit is responsible for payment of his or her own attorney's fees. It is, however,

easily distinguished from this case. In *Clipper Affiliates*, the trial court awarded attorney's fees to a party who sought to intervene for the sole purpose of having her counsel present during her testimony. *Id.* at 277.

In this case, the probate court made extensive findings and rulings that its fee award was based on Shelton's and Betty's initiation and prosecution of the litigation giving rise to this appeal. These rulings included that the litigation constituted a breach of Shelton's fiduciary duties and constituted bad faith. Based upon the record before us, we conclude that the trial court sustainably exercised its discretion in concluding that justice and equity require that Shelton, rather than the innocent beneficiaries of the trust, bear the burden of paying fees to the parties based upon her own bad faith. *See LaMontagne Builders*, 154 N.H. at 259-60; BOGERT, *supra* § 871, at 179-80. Because the trial court has not yet determined the factors it will consider in its apportionment of fees, we express no opinion as to the propriety of a particular fee award in this case. We remand for proceedings consistent with this opinion.

Shelton's final argument is that the trial court erred in removing her as trustee of the EMT trusts. Although the respondents filed a motion requesting Shelton's removal, the trial court found that they were neither settlors nor beneficiaries of the EMT Trusts and that they had "not been aggrieved by the distribution decisions of Trustee Shelton." The trial court also observed that both Betty and Shelton objected to the motion, and that Maggie Goodlander and Christina Goodlander, beneficiaries of the EMT Trusts, had testified at trial that they did not wish to have Shelton removed as trustee. The court ruled, however, that RSA 564-B:7-706 (2007) authorized it to remove a trustee on its own initiative.

RSA 564-B:7-706 (b) provides:

> (b) In addition to the power to remove a trustee pursuant to RSA 564:9, the court may remove a trustee if:
>
> (1) the trustee has committed a serious breach of trust;
>
> (2) lack of cooperation among cotrustees substantially impairs the administration of the trust;
>
> (3) because of unfitness, unwillingness, persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries; or
>
> (4) there has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries, the court

> finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.

Shelton does not challenge the authority of the court to remove her as trustee; rather, she argues that the grounds for removal set forth in RSA 564-B:7-706 (b) were not present in this case. She also argues that the removal of a trustee is an extreme remedy and that the grounds cited by the trial court do not support its decision to remove her as trustee.

We will uphold the findings of fact of the judge of probate unless they are so plainly erroneous that they could not be reasonably made. *King v. Onthank*, 152 N.H. at 17. We review questions of law *de novo. Id.*

RSA 564-B:8-801 (2007) provides: "Upon acceptance of a trusteeship, the trustee shall administer, invest and manage the trust and distribute the trust property in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with this chapter." The trustee has a duty of loyalty, RSA 564-B:8-802 (2007), and where the trust has two or more beneficiaries, "the trustee shall act impartially in administering, investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests." RSA 564-B:8-803. A trustee must also "administer, invest and manage the trust and distribute the trust property as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill and caution." RSA 564-B:8-804.

In support of its decision, the trial court cited Shelton's testimony at trial "that she reluctantly agreed to serve as trustee because Betty was unable to procure an institutional trustee." The court also found that: (1) Shelton was a party to the litigation and "colluded with Betty in creating controversy with the investment directors"; (2) she participated with Betty in interviewing and hiring litigation counsel to bring this lawsuit which resulted in millions of dollars in litigation expenses and fees; (3) she did not conduct "an appropriate cost-benefit analysis prior to bringing this litigation, as suggested by her own expert, John Langbein"; (4) she did not request a transfer of the EMT trust assets until six weeks after she was named trustee; and (5) "litigation costs were so massive" that there were insufficient funds in the EMT Trusts to provide for Betty's three children. *Cf. Weldon Revocable Trust v. Weldon*, 231 S.W.3d 158, 179 (Mo. Ct. App. 2007) (trustee may be removed where clear necessity to save trust property exists). After reviewing the record, we conclude that these findings are not so plainly erroneous that they could not be reasonably made. *See King v.*

*Onthank,* 152 N.H. at 17. We further note that Shelton herself testified at trial that she "would really like for the EMT Trusts to have an institutional trustee, a professional trustee."

Based on these findings, the court concluded that Shelton had violated her duties as trustee. Accordingly, it ruled that Shelton's removal as trustee would best serve the interest of the beneficiaries.

 We have not previously addressed the standard of review applicable to a trial court's decision to remove a trustee under RSA 564-B:7-706(b). Shelton cites *Petition of Lovejoy,* 227 N.E.2d 497, 500 (Mass. 1967), in support of her argument that the trial court erred in removing her as trustee; she specifically quotes the Massachusetts Supreme Judicial Court's holding that, in a case where all the beneficiaries were in agreement on the appointment of a qualified trustee, it was "arbitrary and capricious action and an abuse of discretion" for the court to appoint someone else. Because no party argues that a different standard of review should apply, we will review the trial court's ruling under our unsustainable exercise of discretion standard. *See State v. Lambert,* 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard); *see also* RESTATEMENT (THIRD) OF TRUSTS § 37, comment (d) (1987) (trial court's decision to remove trustee if continued appointment would be detrimental to interests of beneficiary subject to review for abuse of discretion).

 Having reviewed the extensive record before us, we conclude that the trial court's decision to remove Shelton as trustee was sustainable. We need not restate the findings of the trial court that we have previously cited. These findings and other evidence support the trial court's conclusion that Shelton failed to satisfy her statutory duties of loyalty, impartiality and reasonable care of the trust property. We are not persuaded by Shelton's citation of the guardian ad litem's testimony as support for her argument that the trial court erred in concluding that she had committed a breach of trust. As we have previously held, the recommendations of a guardian ad litem do not carry any greater presumptive weight than the other evidence in a case. *In the Matter of Choy & Choy,* 154 N.H. 707, 714 (2007). Nor do we find *Petition of Lovejoy* applicable; in this case, the trial court found many deficiencies in Shelton's performance and, therefore, did not conclude that she was a "suitable person" for the position of trustee.

Accordingly, we affirm the trial court's order that dismissed the petitioners' complaint and that removed Shelton as trustee; we remand for further proceedings to allow the trial court to consider the issue of attorney's fees.

*Affirmed in part; and remanded.*

FAUVER, ARNOLD and FITZGERALD, JJ., retired superior court justices, specially assigned under RSA 490:3, concurred.