NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

7th Circuit Court-Dover Probate Division
No. 2019-0319

DAVID A. HODGES, JR. & a.

v.

ALAN JOHNSON & a.

Argued: May 13, 2020
Opinion Issued: September 23, 2020

Hage Hodes, Professional Association, of Manchester (Jamie N. Hage and Katherine E. Hedges on the brief, and Mr. Hage orally), for Judith L. Bomster and J. Daniel Marr, Co-Trustees of the 2004 David A. Hodges, Sr. Irrevocable GST Exempt Trust and the 2004 David A. Hodges, Sr. Irrevocable GST Non-Exempt Trust.

Barradale, O'Connell, Newkirk & Dwyer, P.A., of Bedford (Pamela J. Newkirk on the brief and orally), and The Stein Law Firm, PLLC, of Concord (Robert A. Stein on the brief), for defendants Alan Johnson and William S. Saturley.

Flood Sheehan & Tobin, PLLC, of Concord, filed no brief, for Joanne M. Hodges.

HICKS, J.  Defendants Alan Johnson and William S. Saturley are the former co-trustees of the 2004 David A. Hodges, Sr. Irrevocable GST Exempt Trust and the 2004 David A. Hodges, Sr. Irrevocable GST Non-Exempt Trust (collectively, the 2004 Trusts).  For ease of reference, we refer to Johnson and Saturley as the Former Co-Trustees.  In 2017, we upheld a circuit court decision, following a bench trial, that set aside "decantings" from the 2004 Trusts and removed the Former Co-Trustees.  See Hodges v. Johnson, 170 N.H. 470, 473, 488 (2017).  As explained in Hodges, "[d]ecanting is the term generally used to describe the distribution of trust property to another trust pursuant to the trustee's discretionary authority to make distributions to, or for the benefit of, one or more beneficiaries."  Id. at 473 (quotation omitted).  We specifically left "for another day the issue of whether [the Former Co-Trustees] are entitled to indemnification for the fees and expenses incurred in this proceeding" because, at that time, the trial court had not ruled upon the issue.  Id. at 488.

In this appeal, the Former Co-Trustees challenge the determination, recommended by a Judicial Referee (Cassavechia, R.), and approved by the Circuit Court (Alfano, J.), that, except for attorney's fees and costs incurred for certain administrative tasks: (1) they are not entitled to be reimbursed from the 2004 Trusts for the post-trial fees and costs they personally incurred to defend the decantings; and (2) they must reimburse the 2004 Trusts for the fees and costs the trusts incurred to defend the decantings at trial.  We affirm.

I.  Facts

We repeat the facts set forth in Hodges as necessary to decide the instant appeal and supplement those facts with facts drawn from the content of documents submitted in the record on appeal.  The settlor of the 2004 Trusts, David A. Hodges, Sr., died in 2015.  Id. at 473.  When the settlor created the trusts in 2004, Johnson was the sole trustee; Saturley was later appointed to be his co-trustee.  Id. at 474.  The beneficiaries of the trusts are: (1) the settlor's ex-wife, Joanne M. Hodges; (2) his three biological children, plaintiff David A. Hodges, Jr. (David Jr.), Nancy Hodges-Friese, and Janice Hodges (now Coville); (3) his two step-children, plaintiffs Barry R. Sanborn and Patricia Sanborn Hodges; and (4) descendants, as defined by the trust instruments.[1] Id. at 473-75.  The 2004 Trusts are irrevocable, and both trust instruments contain a provision in which the settlor specifically acknowledged that he had "no right or power, whether alone or in conjunction with others, in whatever capacity, to alter, amend, modify or revoke the trust instrument or to designate the persons who shall possess or enjoy the trust property or its income."  Id. at 475 (quotations omitted).  The 2004 Trusts were created to take advantage of certain tax benefits related to the family's closely-held business.  See id.

---

[1] The plaintiffs have not appeared in the instant appeal.  According to the record submitted on appeal, they settled their claims before the trial court decided the motions at issue in this appeal.

Each trust instrument provides that, during the settlor's lifetime, the trust beneficiaries had a right to withdraw from the trust whenever property was contributed to it.  Id.  Another provision states that Joanne "during her life should be deemed the primary beneficiary of the trust."  Id. at 476 (quotation omitted).  The instruments also specify that, upon the settlor's and Joanne's deaths, provided that all five of the settlor's children and step-children are then living, the trust corpus is to be divided into five separate trusts for each of the settlor's children and step-children and their respective descendants.  Id. at 475-76.

The trust instruments also provide for discretionary distributions during the settlor's lifetime to the beneficiaries and to so-called "distributee trusts," which are subject to the beneficiaries' rights of withdrawal.  Id. at 475 (quotation omitted).  The provision in each trust document regarding such discretionary distributions allows the trustee(s) to "distribute all or any portion of the net income and principal of the trust to any one or more of the group consisting of [Joanne], [the settlor's] descendants, and distributee trusts, in such amounts and at such times as the Trustee, in the Trustee's discretion, may determine."  Id. (quotation omitted).

The 2004 Trusts also establish a "Committee of Business Advisors," who, by majority vote, have the exclusive authority, upon the settlor's death or incapacity, or upon such earlier date as he may designate, to make all business decisions for the family's business interests.  Id. at 476 (quotation omitted).  The trust instruments empower the settlor, while living and competent, to amend the provisions related to "the appointment, resignation, removal, and number" of the members of the Committee of Business Advisors, as well as "their powers, duties and liability."  Id. at 477 (quotations omitted).

In 2009, the settlor retained an attorney, Joseph McDonald, to assist him in his estate plans.[2]  Id. at 473, 477.  According to McDonald, at that time, the settlor "was reconsidering his prior generosity toward" his step-children (Sanborn and Sanborn Hodges).  Id. at 477.  McDonald advised the settlor that, although the 2004 Trusts are irrevocable, the Former Co-Trustees could decant the trust assets into distributee trusts that could be created for the benefit of some, but not necessarily all, of the beneficiaries of the 2004 Trusts.  Id.  McDonald testified that he informed the Former Co-Trustees that he would be willing to prepare new trusts for the settlor "that would reduce the beneficial interests" of Sanborn and Sanborn Hodges.  Id. at 477-78.  He also testified that he told the Former Co-Trustees that they had the discretion to decant the assets of the 2004 Trusts into those new trusts and that he would be willing to serve as the decanting trustee.  Id. at 478.

---

[2] McDonald had been a defendant, but he settled the claims against him before the trial court decided the motions at issue in this appeal.

3

The decanting documents were executed in 2010, 2012, and 2013. Id. As a result of the 2010 decanting, Sanborn and Sanborn Hodges were specifically excluded from the definition of "descendants" under the trust documents. Id. (quotation omitted). As a result of the 2012 decanting, which superseded and replaced the 2010 decanting, all three plaintiffs (Sanborn, Sanborn Hodges, and David Jr.) were specifically excluded from the definition of "descendants" in the trust documents. Id. (quotation omitted). The 2013 decanting, which superseded and replaced the 2012 decanting, removed Joanne's beneficial interests as well as the plaintiffs' future such interests. Id. at 478. Each decanting was accomplished by Johnson resigning as co-trustee, McDonald replacing Johnson as co-trustee, Saturley delegating his decanting power to McDonald, McDonald executing the decanting documents and resigning as co-trustee, and Johnson being reappointed as co-trustee. Id. at 478.

In April 2014, the plaintiffs filed a petition asking the trial court to declare the decantings void ab initio and to remove the Former Co-Trustees. Id. at 479. Following a three-day bench trial, the trial court granted both requests. Id.

As to the decantings, the trial court found that the evidence suggested "that [they] were undertaken and completed at the request, with the blessing, and at the direction of" the settlor. Id. (quotation omitted). Indeed, the trial court stated that, based upon the totality of the evidence before it, it was "inclined . . . to conclude that [the settlor's] personal desire to disinherit: (1) a daughter with whom he was estranged; (2) sons with whom he was fighting; and (3) a soon-to-be ex-wife who had sided with the sons, took precedence over any concern that the [plaintiffs] and Joanne were a threat to the continuation of [the family business]." Accordingly, the court "deduce[d] that the driving force behind the decision to decant was to honor and carry out the express wishes of [the settlor] to disinherit family members with whom he was unhappy." The trial court did not find "particularly convincing" the evidence offered by the Former Co-Trustees to support their contention that they operated independently of the settlor's "direct influence or direction," observing that there was "no evidence that [the Former Co-Trustees] . . . ever consulted independent counsel specializing in trusts and estates."

Additionally, the trial court stated that the "substantial beneficial interest" held by one of the Former Co-Trustees in a separate revocable trust controlled by the settlor and that Former Co-Trustee's appointment as president of the family business and his "long-term status" as the business's chief financial officer, "along with [the other Former Co-Trustee's] position as corporate counsel and member of the Committee of Business Advisors, and the fact that . . . McDonald was hired by, and billed, [the settlor] for the specific purpose and in the course of investigating removal of disfavored family members from his irrevocable trusts, leastwise leave a taint that is not removed

4

by the very fact a law exists requiring trustees to act independently of a grantor."

However, the court did not invalidate the decantings on the basis that they were directed by the settlor. Hodges, 170 N.H. at 479. The trial court observed that doing so could "endanger the receipt of tax benefits due to the irrevocable nature of the 2004 Trusts and trigger a large federal tax liability." The court also did not find that the Former Co-Trustees had acted in bad faith. Id.

Rather, the court invalidated the decantings on the ground that the Former Co-Trustees accomplished them without "giv[ing] due regard for the diverse beneficial interests created by the terms of the trust." Id. at 481 (quotation omitted). The trial court observed that the Former Co-Trustees gave consideration "to the business purposes and effect of the decanting" on the family business, and that they "were . . . acutely aware of personality conflicts among [family] members" that might threaten that business. (Citation omitted.) However, the trial court found, the Former Co-Trustees failed to demonstrate sufficiently "that the beneficial interests" of the disinherited beneficiaries "were ever taken account of or considered." (Emphasis omitted.) The court concluded that the Former Co-Trustees "did not make any adjustments to the structure of the decanting or choice of the method with which the beneficial interests might be permissibly modified in light of consideration given to those interests." Moreover, the court found "no documentary evidence, and little or no testimonial evidence, that the [Former Co-Trustees] ever considered less draconian measures — or to put it another way — options that would have mitigated or neutralized the risk to the company, but resulted in something less than the complete removal of the [plaintiffs'] beneficial interests established under the 2004 Trusts." As the trial court explained, while the settlor "may or may not have had valid reasons to be unhappy with members of his family, . . . having put them irrevocably in the 2004 trusts, the [Former Co-Trustees] had a duty to take their interests into account and not dismissively ignore them."

The trial court determined that the failure of the Former Co-Trustees to consider the interests of the disinherited beneficiaries "was an abuse of their discretionary powers to decant," and that their removal as trustees was in the best interests of the beneficiaries "given the obvious enmity and distrust between the parties." Id. at 487 (quotations omitted); see RSA 564-B:7-706(b)(1) (2019) (authorizing court removal of a trustee when "the trustee has committed a serious breach of trust"), (b)(3) (2019) (authorizing court removal of a trustee when "because of unfitness, unwillingness, persistent failure of the trustee to administer the trust effectively, . . . removal of the trustee best serves the interests of the beneficiaries").

5

We affirmed both aspects of the trial court's decision on appeal pursuant to the decanting statute as it existed when the decantings took place. Hodges, 170 N.H. at 473, 488; see RSA 564-B:4-418 (Supp. 2008) (amended 2014, 2015, 2017). In doing so, we clarified that the phrase the trial court used, "due regard for the diverse beneficial interests created by the terms of the trust," denotes the fiduciary duty of impartiality. Hodges, 170 N.H. at 481-83 (quotation omitted); see RSA 564-B:8-803 (2019) (setting forth statutory duty of impartiality under which a trustee of a trust with two or more beneficiaries must "act impartially in administering, investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests"). Thus, we interpreted the trial court's decision as a determination that, by failing to consider the plaintiffs' future beneficial interests, the Former Co-Trustees had violated the statutory duty of impartiality. See Hodges, 170 N.H. at 481-82.

We made clear that neither making unequal distributions among beneficiaries, see RSA 564-B:8-814(c) (2019), nor decanting, see RSA 564-B:4-418, necessarily violates the duty of impartiality. Hodges, 170 N.H. at 483-84. Rather, "a trustee, who makes unequal distributions among beneficiaries and/or eliminates a beneficiary's non-vested interest in an irrevocable trust through decanting, violates the statutory duty of impartiality only when the trustee fails to treat the beneficiaries equitably in light of the purposes and terms of the trust." Id. at 484 (quotation omitted; emphases added); see Charles E. Rounds, Jr. & Charles E. Rounds, III, Loring and Rounds: A Trustee's Handbook § 6.2.5, at 661 & n.682 (2018 ed.).

We then examined the purposes and terms of the 2004 Trusts and determined that one purpose was to support the beneficiaries. Hodges, 170 N.H. at 484. We upheld the trial court's finding that the Former Co-Trustees had failed to consider that purpose when they "failed to give any consideration to the plaintiffs' future beneficial interests, contrary to the statutory duty of impartiality." Hodges, 170 N.H. at 480, 485, 486.

As to the removal of the Former Co-Trustees, the trial court cited RSA 564-B:7-706(b)(1), which authorizes court removal of a trustee when "the trustee has committed a serious breach of trust." Hodges, 170 N.H. at 487 (quotation omitted). Based upon our review of the record, we held that "[t]he trial court could reasonably have concluded that [the Former Co-Trustees] committed a 'serious breach of trust' when they . . . violated their duty of impartiality." Id. at 488.

In July 2018, after the case had been returned to the trial court, the trial court appointed Judith L. Bomster and J. Daniel Marr to be the successor co-trustees of the 2004 Trusts (the Successor Co-Trustees). Thereafter, the Former Co-Trustees filed a motion for attorney's fees and costs, seeking to be reimbursed by the 2004 Trusts for the fees and costs they personally incurred

while defending the decantings.[3]  The Successor Co-Trustees objected and filed their own motion asking the court to order the Former Co-Trustees to repay the 2004 Trusts $89,586.91 in fees and costs the trusts incurred on behalf of the Former Co-Trustees to defend the decantings at trial.  After a non-evidentiary hearing, the trial court denied the Former Co-Trustees' motion, granted the Successor Co-Trustees' motion, and ordered the Former Co-Trustees to reimburse the 2004 Trusts $89,586.91.

The trial court began by reviewing "multiple provisions of the New Hampshire Trust Code, see RSA ch. 564-B, as supplemented by 'the common law of trusts and principles of equity.'" (Quoting RSA 564-B:1-106 (2019).) Specifically, it reviewed "the laws authorizing a trustee to either seek reimbursement for costs incurred, or [to] incur costs [in the first instance,] . . . [and] statutes concerning the liability of trustees and right of persons dealing with trustee[s], in particular those applicable in this matter, namely: the right to remedies for breach of trust; damages for breach of trust; and importantly, award of attorney's fees and costs."  (Citations and quotation omitted.)  See RSA 564-B:7-709 (2019) (concerning the right of a trustee to seek reimbursement for expenses incurred), :8-805 (2019) (concerning the right of a trustee to incur costs in the first instance), :10-1001 (2019) (concerning remedies for breach of trust), :10-1002 (2019) (concerning damages for breach of trust), :10-1004 (2019) (concerning attorney's fees and costs).

The trial court decided that the Former Co-Trustees are not entitled to be reimbursed for their post-trial non-appellate fees and costs because the trial court had found in Hodges that they had committed a serious breach of trust. Under those circumstances, the court ruled that the fees and costs were not "properly incurred" by the Former Co-Trustees and did not "constitute a reasonable use of trust assets."  (Quotation omitted.)  See RSA 564-B:7-709(a)(1) (providing that a trustee may be reimbursed for "expenses that were properly incurred"), :8-805 (allowing a trustee to "incur only costs that are reasonable").  Thus, except as to fees and costs incurred responding to certain trial court orders, the trial court denied the Former Co-Trustees' motion for reimbursement.

To the extent that the Former Co-Trustees sought reimbursement for their appellate fees and costs, the trial court declined to award such fees and costs on two alternative grounds.  First, the court determined that it lacked authority to award appellate fees and costs.  See Sup. Ct. R. 23.  Second, the trial court determined that even if it had that authority, it would not direct

---

[3] As the Former Co-Trustees explain in their brief, the 2004 Trusts paid their attorney's fees and costs through trial.  However, while the appeal in Hodges was pending, the Former Co-Trustees personally paid their attorney's fees and costs.  Thus, in their motion, the Former Co-Trustees sought to be reimbursed for the post-trial attorney's fees and costs that "they paid out of pocket," totaling approximately $39,573.

reimbursement of the appellate fees and costs incurred to defend the decantings for the same reason that it would not direct reimbursement of the non-appellate fees and costs incurred for that purpose.

As to the Successor Co-Trustees' motion, the trial court determined that "justice and equity" required the Former Co-Trustees to personally reimburse the 2004 Trusts for the fees and costs the trusts paid to defend the decantings. The court reasoned that "[t]he same facts that justif[ied] [its] decision to decline reimbursement from the 2004 Trusts for fees and costs associated with defense of the decantings . . . , support an order directing the [Former Co-Trustees] to personally reimburse the 2004 Trusts." The court concluded that this is a "classic case" for such an order because the Former Co-Trustees had acted "wrongfully" and the litigation had been "made necessary" by their misconduct. (Quotations omitted.). The court found that it would be "unfair and unjust" to "charge the 2004 Trusts with the cost of lengthy litigation in defense of what is seen as an indefensible fiduciary breach of duty." This appeal followed.

II.  Analysis

A.  Standards of Review

Our standard of review is determined by statute: "The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made." RSA 567-A:4 (2019). Consequently, we will not disturb the probate division's decree unless it is unsupported by the evidence or plainly erroneous as a matter of law. Hodges, 170 N.H. at 480. "Our standard of review is not whether we would rule differently than the trial court, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence." Cook v. Sullivan, 149 N.H. 774, 780 (2003). "Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence." Id. "We review questions of law de novo." Shelton v. Tamposi, 164 N.H. 490, 504 (2013).

We review the probate division's statutory interpretation de novo. Hodges, 170 N.H. at 480. Resolving the issues in this appeal requires that we interpret provisions of the New Hampshire version of the Uniform Trust Code, see RSA ch. 564-B (2019 & Supp. 2019). To do so, we rely upon our ordinary, well-established rules of statutory construction. Hodges, 170 N.H. at 480; see Shelton, 164 N.H. at 499. Under those rules, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. Hodges, 170 N.H. at 480. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id.

We also rely upon the official comments to the Uniform Trust Code. Id. "When interpreting a uniform law, such as the Uniform Trust Code, the intention of the drafters of a uniform act becomes the legislative intent upon enactment." Id. (quotation omitted).[4]

### B. RSA 564-B:7-709

On appeal, the Former Co-Trustees first argue that the trial court erred by failing to consider whether they had properly incurred the subject attorney's fees and costs pursuant to RSA 564-B:7-709 and RSA 564-B:8-805. In fact, the trial court thoughtfully examined that issue. See Guy v. Town of Temple, 157 N.H. 642, 649 (2008) ("[T[he interpretation of a tribunal's order presents a question of law, which we review de novo.").

The Former Co-Trustees next assert that the trial court erred by failing to find that they are entitled to reimbursement under RSA 564-B:7-709 for the post-trial fees and costs they personally incurred to defend the decantings. RSA 564-B:7-709(a)(1) provides that a trustee is entitled "to be reimbursed out of the trust property, with interest as appropriate" for "expenses that were properly incurred in the administration of the trust." According to the official comments to the Uniform Trust Code, "[r[eimbursement under this section may include attorney's fees and expenses incurred by the trustee in defending an action. However, a trustee is not ordinarily entitled to attorney's fees and expenses if it is determined that the trustee breached the trust." Unif. Trust Code § 709, Comment (2010) (emphasis added); see Rounds, Jr. & Rounds, III, supra § 3.5.2.3, at 123 ("Certainly the obligation to pay any attorneys' fees that were incurred by a trustee in the unsuccessful defense of a breach of fiduciary duty action ought not to be directly or indirectly imposed on those to whom the duty ran.").

The trial court found that the Former Co-Trustees are not entitled to be reimbursed under RSA 564-B:7-709 because the post-trial fees and costs they incurred to defend the decantings were not "properly incurred" as part of their duties to administer the 2004 Trusts. The trial court explained that the Former Co-Trustees "were found [in Hodges], and the record clearly supports, to have committed a 'serious breach of trust,' justifying and necessitating their removal and orders declaring the decantings void ab initio." The court described the breach of trust as "particularly egregious." The court ruled that the "failure [of the Former Co-Trustees] to undertake the unwaivable duty to consider the interests of the beneficiaries . . . allowed the decantings to occur

---

[4] Hodges was a 2-1 decision of a three-person court. It is the law of this case regardless of its precedential value. See Saunders v. Town of Kingston, 160 N.H. 560, 566 (2010) (describing the law of the case doctrine); Perrault v. Town of New Hampton, 171 N.H. 183, 187-88 (2018) (describing the limited precedential value of plurality opinions).

and necessitated costly litigation on the part of the beneficiaries." The Former Co-Trustees do not directly challenge these findings and legal rulings on appeal, nor could they do so given that the trial court accurately summarized and applied the relevant law to factual findings upheld in Hodges. See Hodges, 170 N.H. at 485-87.

Rather, the Former Co-Trustees argue that the fees and costs they incurred to defend the decantings were "properly incurred" because, had they failed to defend the decantings, they would have violated their duties of good faith, loyalty, and prudence to Hodges-Friese and Coville and their descendants. The Former Co-Trustees assert that, had they "failed to defend the decantings, the resulting beneficial interests of the [Hodges-]Friese and Coville beneficiaries would have each been reduced from fifty percent . . . to twenty percent." In other words, the Former Co-Trustees contend, in effect, that they had a fiduciary duty to defend the decantings.

However, the Former Co-Trustees had no fiduciary duty to defend their misconduct. Nor can they rely upon the conflict that, by decanting, they created between the interests of the Hodges-Friese and Coville beneficiaries, on the one hand, and the plaintiffs' beneficial interests, on the other hand, to obtain reimbursement under RSA 564-B:7-709(a)(1). The settlor's intent when the 2004 Trusts were created, as evidenced by the structure of those trusts, was that the trustee(s) treat all five of his children equally, except under certain, specifically-enumerated circumstances. Under the 2004 Trusts: all five children are included in the definition of "descendants"; all five children are granted withdrawal rights during the settlor's lifetime; and, upon the death of the settlor and Joanne, the trust property was to be divided "into . . . equal shares," with one share allocated to each of the five children.

The circumstances under which the settlor intended the trustee(s) to treat his children unequally are set forth in the 2004 trust documents. For instance, the 2004 trust instruments state that it was the settlor's "hope (but not direction)" that the trustee(s) not make any distributions to a beneficiary who is able to be gainfully employed, but who is not so employed "(except after a reasonable retirement age)." Additionally, the 2004 trust instruments provide that it was the settlor's desire that no distribution be made to a beneficiary who "has been convicted of a felony, is a regular gambler, or has a substance abuse problem" until "the beneficiary has reformed his or her behavior." Thus, had the Former Co-Trustees not decanted, there would have been no conflict between the beneficial interests of the Hodges-Friese and Coville beneficiaries, on the one hand, and the beneficial interests of the plaintiffs on the other hand. Accordingly, we are not persuaded that the conflict the Former Co-Trustees themselves created by decanting entitles them to reimbursement under RSA 564-B:7-709(a)(1).

10

Nor are we persuaded that the Former Co-Trustees are entitled to reimbursement simply because there is little case law regarding the interplay between a trustee's fiduciary duties and the authority to decant. See Ivan Taback & David Pratt, When the Rubber Meets the Road: A Discussion Regarding a Trustee's Exercise of Discretion, 49 Real Prop. Tr. & Est. L.J. 491, 518 (2015) (observing that there are "few, if any, cases . . . that clarify a trustee's fiduciary duties in the context of decanting"). The Former Co-Trustees cite no authority for this proposition and do not develop this argument. Regardless of the law related to decanting, there is ample case law regarding a trustee's duty of impartiality.

Instead of participating in the decantings based solely upon the advice of the settlor's own counsel under circumstances suggesting that the decantings were "at the [settlor's] direction" to disinherit disfavored family members, the Former Co-Trustees could have obtained an independent legal opinion or petitioned the trial court for instruction. Hodges, 170 at 479 (quotation omitted); see RSA 564-B:2-201 (2019). They did neither.

The Former Co-Trustees assert that the trial court "inappropriately relied" upon the fact that they did not file a petition for instruction. They argue that the trial court's reliance was improper because: (1) the court "failed to establish a valid foundation or set out any criteria to support its assertion that [they] should have filed a petition"; (2) there "was no established law" suggesting that "their decision-making . . . was subject to doubt or conflicting claims"; (3) they needed to act expeditiously to prevent the plaintiffs and Joanne from acting detrimentally to the 2004 Trusts; (4) bringing a petition for instruction would have resulted in "hotly contested" and "expensive" litigation; (5) "[t]he decanting decision concerned contingencies that are not appropriate for a petition for instruction"; and (6) even after Hodges, "we do not know how the Former Co-Trustees should have exercised their duty of impartiality." (Emphases omitted.)

However, it is precisely when there is "uncertainty as to the proper application of the law to the facts" that a petition for instruction is warranted. Rock Springs Land and Timber, Inc. v. Lore, 75 P.3d 614, 623 (Wyo. 2003) (quotation omitted). Section 71 of the Restatement (Third) of Trusts provides: "A trustee . . . may apply to an appropriate court for instructions regarding the administration or distribution of the trust if there is reasonable doubt about the powers or duties of the trusteeship or about the proper interpretation of the trust provisions." Restatement (Third) of Trusts, § 71 (2007). "A trustee commits a breach of trust not only by violating a duty as a result of negligence or misconduct but also, ordinarily, by violating a duty because of a mistake concerning the nature or extent of the trustee's powers and duties under the terms of the trust or applicable law." Id. cmt. a at 9 (citation omitted). Accordingly, "[t]o avoid undue risk of liability when reasonable doubt exists in

11

these matters, a trustee may seek protection by applying for instructions from an appropriate court." Id.  Contrary to the Former Co-Trustees' assertions,

> a trustee need not act at his or her peril in administering a trust. Nor need a trustee act first and discover later whether a particular act was in breach of trust.  Instead, a trustee is entitled to judicial instructions whenever there is reasonable doubt about the powers or duties of the trusteeship or about the proper interpretation of the trust provisions.  Indeed, a trustee can properly pay the costs of seeking instructions out of the trust estate, unless seeking them was plainly unwarranted, because there was no reasonable uncertainty about the matter in question.

3 Austin Wakeman Scott, William Franklin Fratcher & Mark L. Ascher, Scott and Ascher on Trusts, § 16.8, at 1070-71 (5th ed. 2007) (quotation omitted).

To the extent that the trial court concluded that the circumstances in this case should have caused the Former Co-Trustees to have reasonable doubt as to whether the decantings at issue were proper, we agree.  Here, the decantings to exclude beneficiaries of irrevocable trusts were to be accomplished under circumstances suggesting that the settlor directed them so as to disinherit disfavored family members.  Those circumstances should have caused the Former Co-Trustees to have reasonable doubt as to the propriety of the decantings.

Thus, we find no error in the trial court's suggestion that, before participating in the decantings, the Former Co-Trustees could have filed a petition for instruction or obtained an independent legal opinion, instead of relying exclusively upon McDonald's advice under circumstances suggesting that he was doing the settlor's bidding to disinherit beneficiaries with whom the settlor was unhappy.  See Hodges, 170 N.H. at 477, 479.

For all of the above reasons, therefore, under the unique circumstances in this case, we cannot conclude that the trial court erred when it determined that the Former Co-Trustees are not entitled to reimbursement under RSA 564-B:7-709(a)(1) for the fees and costs they personally incurred to defend the decantings.

### C.  RSA 564-B:8-805

The Former Co-Trustees next contend that the trial court erred when it ruled that RSA 564-B:8-805 does not entitle them to indemnification.  RSA 564-B:8-805 provides: "In administering, investing, and managing the trust and distributing the trust property, the trustee may incur only costs that are reasonable in relation to the trust property, the purposes of the trust, and the skills of the trustee."  See Restatement (Third) of Trusts, supra § 88 ("A trustee

12

can properly incur and pay expenses that are reasonable in amount and appropriate to the purposes and circumstances of the trust and to the experience, skills, responsibilities, and other circumstances of the trustee.").

A trustee may "properly incur expenses for reasonable counsel fees and other costs in bringing, defending, or settling litigation as appropriate to proper administration or performance of the trustee's duties." Id. cmt. d at 258. "The right of indemnification applies even though the trustee is unsuccessful in the action, as long as the trustee's conduct was not imprudent or otherwise in violation of a fiduciary duty." Id. (emphasis added). Thus, "[t]o the extent the trustee is successful in defending against charges of misconduct, the trustee is normally entitled to indemnification for reasonable attorneys' fees and other costs." Id. at 258-59. However, "to the extent the trustee is found to have committed a breach of trust, indemnification is ordinarily unavailable." Id. at 259; see Lattuca v. Robsham, 812 N.E.2d 877, 882-83 (Mass. 2004) (upholding the trial court's denial of the trustee's claim against the trust for attorney's fees when the trial court "concluded that . . . this litigation would not have been necessary if [the trustee] had performed his duties as he should have in the first place" and "could have found [the trustee] at fault for the litigation expenses that were subsequently incurred, even in the absence of wilful breach of trust"); In re Trust Created Under Mitchell, 788 N.E.2d 433, 437 (Ind. Ct. App. 2003) ("A trustee may be precluded from recovering attorney fees from the trust if the litigation arose because of the misconduct and/or negligence of the trustee."); In re Estate of Stowell, 595 A.2d 1022, 1026-27 (Me. 1991) (affirming the trial court's denial of reimbursement to the trustee of his attorney's fees because the "costs incurred in defending his accounts resulted, at least in part, from [his] breaches of fiduciary duty"); Wiglesworth v. Taylor, 391 S.E.2d 299, 303 (Va. 1990) ("Although a trustee is entitled to reimbursement from the trust for reasonable attorney's fees expended in protecting the trust, a trustee should not receive such reimbursement when he caused the litigation." (citations omitted)); Citizens and Southern Nat. Bank v. Haskins, 327 S.E.2d 192, 203 (Ga. 1985) ("While a trustee may be entitled to attorney fees incurred in the protection and preservation of the estate, he is not entitled to charge the trust estate with fees for defending his own maladministration against the justifiable complaint of the beneficiaries." (quotation and brackets omitted)).

The Restatement (Third) of Trusts § 88 offers the following illustration:

> 2. B brought suit seeking T's removal as trustee and damages allegedly based on T's breach of its duty of impartiality. The court found that, although T had violated its duty of impartiality and its duty to provide certain relevant information requested by B, it had not acted in bad faith and that, under the terms of the trust as properly interpreted, B had suffered no damages from T's conduct. In refusing either to surcharge T or remove it from office, the court instructed T on relevant aspects of its fiduciary duties and its

13

obligations to B; on these facts, it would not be an abuse of the court's discretion to refuse to award T some or all of its costs based on a finding that the litigation initiated by B was reasonable and was caused by T's misconduct and a need to correct it.

Restatement (Third) of Trusts supra § 88, cmt. d at 259. "Ultimately, . . . the matter of the trustee's indemnification is within the discretion of the trial court, subject to appeal . . . . " Id.

The trial court ruled that the Former Co-Trustees are not entitled to indemnification under RSA 564-B:8-805 because of their "serious and egregious" breaches. The court found that the "use of trust funds to defend these acts would not constitute a reasonable use of trust assets."

The trial court's ruling is supported by the evidence and is not contrary to the law. Given the trial court's finding in Hodges that the Former Co-Trustees breached their duty of impartiality and given that such a breach could reasonably be termed "serious," we see no error in the trial court's determination that the use of trust funds to defend the decantings would not be reasonable. Hodges, 170 N.H. at 488 (quotation omitted).

In arguing for a contrary result, the Former Co-Trustees assert that: (1) they "had a well-founded basis in law to believe that the decantings were valid"; (2) they had a good faith belief that the decantings were valid; (3) they did not act in bad faith; and (4) they relied upon the expertise of the settlor's attorney, McDonald, who advised that the decantings were proper. However, the trial court rejected these assertions, finding that the Former Co-Trustees' reliance upon McDonald's advice was unreasonable, and that the record does not support a finding that they acted in good faith. The court specifically found that the Former Co-Trustees did not make "a simple mistake," but rather engaged in a "long-term, deliberate, undertaking coordinated under the direction of . . . McDonald to remove the beneficial interests of the [plaintiffs] at the behest of [the settlor]." See Hodges, 170 N.H. at 479.

The Former Co-Trustees also contend that their defense of the decantings was not, itself, a breach of a fiduciary duty. Even assuming this to be the case, it does not persuade us that the trial court unsustainably exercised its discretion when it declined to indemnify the Former Co-Trustees for the fees and costs they personally incurred defending the decantings. See Restatement (Third) of Trusts, supra § 88 cmt. d at 259 ("Ultimately, . . . the matter of the trustee's indemnification is within the discretion of the trial court . . . ."). Because we have upheld the trial court's decision to deny the Former Co-Trustees' request for indemnification of the fees and costs they incurred to defend the decantings on other grounds, we need not address their assertion that the trial court erroneously determined that it lacked the authority to reimburse them for their appellate fees under Supreme Court Rule 23.

14

D.  RSA 564-B:10-1004

The Former Co-Trustees next argue that the trial court erred by ordering them, pursuant to RSA 564-B:10-1004 and as requested by the Successor Co-Trustees, to personally reimburse the 2004 Trusts for the attorney's fees and costs the trusts incurred to defend the decantings.  RSA 564-B:10-1004 provides: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy."  For the purposes of this appeal, because the Former Co-Trustees have not argued otherwise, we assume without deciding that RSA 564-B:10-1004 applies to the circumstances in this case.

RSA 564-B:10-1004 constitutes a statutory exception to the American Rule that generally each party is responsible for his or her own attorney's fees. Shelton, 164 N.H. at 502.  The phrase "as justice and equity may require" establishes "a broad standard . . . that . . . reaches beyond bad faith or wrongful conduct." Id. (quotation omitted).  However, before a court may award fees under this provision, it "must provide a reason, grounded in equity, as to why such an award should be made." Id.  "While the statute does not provide specific criteria for such an award, it gives the trial court flexibility to determine what is fair on a case by case basis." Id.  The use of the word "any" in RSA 564-B:10-1004 "conveys broad authority upon the trial court to award attorney's fees to any party to be paid by another party as justice and equity may require." Id. (quotations omitted).  Thus, under certain circumstances, RSA 564-B:10-1004 "authorize[s] the award of attorney's fees against a trustee personally." Id.

We review the trial court's award of attorney's fees under our unsustainable exercise of discretion standard, giving deference to the trial court's decision. Id. at 501.  To be reversible on appeal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party. Id.  If there is some support in the record for the trial court's determination, we will affirm it. Id.

The Former Co-Trustees argue that the trial court unsustainably exercised its discretion by awarding fees against them personally under RSA 564-B:10-1004 without first considering the following factors: (1) the "reasonableness of the parties' claims, contentions, or defenses"; (2) whether the litigation was unnecessarily prolonged; (3) the parties' "relative ability to bear the financial burden"; and (4) "whether a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons in the bringing or conduct of the litigation." Atwood v. Atwood, 25 P.3d 936, 947 (Okla. Civ. App. 2001); see In Re Trust No. T–1 of Trimble, 826 N.W.2d 474, 491 (Iowa 2013) (adopting Atwood factors).

15

The factors the Former Co-Trustees identify are among those first adopted in Atwood from "general criteria drawn from other types of cases" to "provide nonexclusive guides" to trial courts and reviewing courts applying the "highly subjective phrase 'justice and equity.'" Atwood, 25 P.3d at 947. We have not previously adopted the Atwood factors under New Hampshire law and decline to do so in this case. Absent legislative direction, we will not cabin the broad discretion the statute grants trial courts by requiring them to consider pre-determined factors to decide "what is fair" in any particular case. Shelton, 164 N.H. at 502; see Rogers v. Rogers, 171 N.H. 738, 743 (2019) ("We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.").

In this case, the trial court determined that because of the Former Co-Trustees' "serious breach; admitted and improper near total reliance on the Settlor's paid counsel, . . . McDonald; failure to seek independent advice concerning their duties to the beneficiaries; and pursuit of decantings that increased the likelihood of litigation, it would be unfair and unjust . . . to charge the 2004 Trusts with the cost of lengthy litigation in defense of what is seen as an indefensible fiduciary breach of duty." See Hodges, 170 N.H. at 485-88. We cannot say that the trial court's decision constituted an unsustainable exercise of discretion. See Shelton, 164 N.H. at 503; cf. Dardovitch v. Haltzman, 190 F.3d 125, 146 (3d Cir. 1999) ("[A] trustee may be found liable for a beneficiary's attorney's fees when the trustee has acted wrongfully, especially where the litigation itself is made necessary by the trustee's defalcation.").

Affirmed.


BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred; BROWN, J., retired superior court justice, specially assigned under RSA 490:3, concurred.